UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA M. EHROB,

       Plaintiff,                        CIVIL ACTION NO. 09-13732

       v.                                DISTRICT JUDGE VICTORIA A. ROBERTS

COMMISSIONER OF              MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I. PROCEDURAL HISTORY

### A. *Proceedings in this Court*

On September 21, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability/disability insurance benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 11, 16).

### B. *Administrative Proceedings*

Plaintiff filed the instant claims on November 14, 2006, alleging that she became unable to work on July 24, 2003 (Tr. 103-107). The claim was initially disapproved by the

Commissioner on January 12, 2007 (Tr. 59-62). Plaintiff requested a hearing, and on January 21, 2009, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Robert Asbille, who considered the case *de novo*. In a decision dated March 24, 2009, the ALJ found that Plaintiff was not disabled (Tr. 9-19). Plaintiff requested a review of this decision on April 3, 2009 (Tr. 6-7). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on August 26, 2009, denied Plaintiff's request for review (Tr. 1-3); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 31 years old on the alleged disability onset date (Tr. 18). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since April 5, 2007 (Tr. 14). At step two, the ALJ found that Plaintiff had the following "severe" impairments: spinal degenerative disc disease with cervical and lumbar radiculopathy and adjustment disorder with anxiety. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 15). Between steps three and four, the ALJ found that Plaintiff

had the Residual Functional Capacity (RFC) to perform "sedentary work...except that she can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 2/8 hours in divided periods; sit 6/8 hours with the option to sit/stand at will; and perform postural activities such as stooping, crawling, climbing, crouching, kneeling, or balancing occasionally. She must avoid exposure to unprotected heights or dangerous moving machinery and she is limited to simple routine tasks" (Tr. 16). At step four, the ALJ found that Plaintiff could not perform her previous work (Tr. 18). At step five, the ALJ denied Plaintiff benefits, as the ALJ found, based upon the testimony of a vocational expert, that Plaintiff could perform a significant number of jobs available in the national economy, such as order clerk, sorter and bench assembler (Tr. 18).

### B. *Administrative Record*

#### 1. **Plaintiff's Testimony and Statements**

In a disability report, Plaintiff listed a congenital back disorder, epilepsy, and cardiac issues as the causes of her disability (Tr. 123). She said her conditions limited her ability to work because she could not stand for long periods of time and found it difficult and painful to lift heavy objects. *Id*. Plaintiff denied having seen a doctor for emotional or mental problems that limited her ability to work (Tr. 125). When asked about her daily activities, she reported cleaning the house ("nothing difficult enough to hurt"), cooking complete meals, watching TV, doing laundry, and running errands (Tr. 140-42). She reported taking care of her disabled husband and a cat without assistance from anyone else (Tr. 141). At times, she spent six hours on vacuuming, dusting, and laundry (Tr. 142). When given a list of postural limitations, she reported difficulty with all of them, stating that if she attempted them for more than 15-30 minutes, she would

experience excruciating pain (Tr. 145). She reported walking half a mile before needing to rest. *Id.* She did not use any assistive devices (Tr. 146).

### 2. Medical Evidence

In March 2006, Plaintiff saw Dr. Ruth Rydstedt for a physical. The doctor's findings on examination were unremarkable – no spine tenderness, radial pulses intact, and normal reflexes (Tr. 221). Because of the history of back discomfort, Dr. Rydstedt recommended seeing a neurologist (Tr. 222). She noted "[u]nderlying anxiety depression" exacerbated by the death of Plaintiff's grandmother and Plaintiff's concerns about her own health. *Id.* The doctor did not recommend follow-up for any mental health issue.

The state agency sent Plaintiff to Dr. L. Banerji for a consultative examination in April. He noted a seizure disorder, but also noted that, as long as Plaintiff took her medication, the disorder was controlled (Tr. 241). Dr. Banerji found Plaintiff had no psychiatric problems. *Id.* Plaintiff's spine was not tender, and she had normal range of motion (although she reported pain with motion). Straight leg raising (SLR) tests were positive at 80 degrees on both sides. Plaintiff could walk on the tips of her toes or on her heels; she could also tandem gait. There was no loss of dexterity of movements of the fingers (Tr. 242). In addition to a controlled seizure disorder, Dr. Banerji wrote: "Osteoarthritis, Spondylolisis and Sponylolisthesis of the Lumbar Spine but there is no significant abnormal physical finding or functional limitation noted" except for the positive SLR tests, which were suggestive of lumbar radiculopathy (Tr. 243). On an attached form, the doctor indicated that Plaintiff could perform a number of activities, including climbing stairs, stooping, and picking up pencils or coins (Tr. 244).

Also in April, the state agency asked psychologist Patricia Pearson to perform a consultative examination. Ms. Pearson found that Plaintiff had a positive relationship with her family, a very supportive marriage, and good relations with coworkers and employers (Tr. 387). Plaintiff indicated that she used to enjoy many physical activities, but now could only swim; she explained that swimming did not require weight bearing. She also said that she enjoyed drawing and art. Plaintiff was oriented, but was frustrated about her financial situation and physical limitations (Tr. 388). She denied ongoing anxiety or feelings of hopelessness. *Id.* The formal mental status exam was mostly normal, with only a few errors (*e.g.*, recall of 2 instead of 3 items, one error on the serial sevens task) (Tr. 389). Axis I diagnoses were an adjustment disorder and a pain disorder (Tr. 390). Plaintiff's GAF score was 58.[1]

In May, Plaintiff had an X-ray of the lower back taken. It showed Grade I sponylolisthesis (the least severe level) at L5 with associated spondylosis. There was also a minimal narrowing of the L4-L5 disc space (Tr. 224). The next month, Plaintiff saw neurologist Dr. Martha A. Frankowski regarding her back and seizure disorder. She told the doctor that her symptoms were worse with repetitive bending, twisting, or lifting (Tr. 256). Plaintiff's mental status examination was normal (Tr. 257-58). Plaintiff's extremities were fine, with normal deep tendon reflexes, motor function, sensation, and pulses. *Id.* The straight leg raising test was

---

[1] The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

positive with complaints of back and thigh pain but no radicular pain (Tr. 258). Dr. Frankowski ordered a lumbar spine MRI, but Plaintiff declined an EMG (Tr. 259). On a followup visit in November, Dr. Frankowski made essentially the same findings (Tr. 249-253).

An MRI was done in December 2006. The radiologist found degenerative disc disease with mild bulging to the right at the L4-L5 level, and no central canal stenosis or obvious narrowing of the neural foramina (Tr. 392).

A state agency psychiatrist, Dr. Thomas T.L. Tsai, determined in December 2006 that Plaintiff had mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and no episodes of extended decompensation (Tr. 274). His functional capacity assessment was that Plaintiff could do unskilled work (Tr. 280).

In January 2007, state agency physician Dr. R.H. Digby reviewed the file. He stated that Plaintiff could do light work (*i.e.*, carry twenty pounds occasionally and ten pounds frequently) and occasionally perform activities such as climbing, stooping, and kneeling (Tr. 284-85).

The next medical evidence is from Dr. Mark Brennan in April 2007. Dr. Brennan had apparently seen Plaintiff before (*See* Tr. 297 (noting follow up)). Plaintiff told Dr. Brennan that she could not tolerate "prolonged sitting or standing activities, bending or twisting at the back[,] or lifting heavy objects secondary to increased back pain." *Id.* The notes indicate no increased nervousness, mood changes, or depression and indicate that Plaintiff was "[c]oping well" (Tr. 298). Plaintiff had unremarkable gait and station, with a moderate degree of muscle tenderness (Tr. 298-99). Motor strength, with one exception, and deep tendon reflexes were normal (Tr.

299). Dr. Brennan prescribed physical therapy and gave Plaintiff an oral steroid and Vicodin (Tr. 300).

On future visits with Dr, Brennan, many of the observations in the notes are the same. By September 2007, Dr. Brennan indicated that Plaintiff was making gradual progress with physical therapy and was pleased with the progress she had made (Tr. 307). At monthly visits, Dr. Brennan continued writing prescriptions for Vicodin and physical therapy (and, for the first few follow ups, oral steroids), but did not implement any additional treatment modalities. In various notes, Dr. Brennan observed some loss of sensation, but the location was not consistent. Diagnoses of a cervical radiculopathy (Tr. 314) and carpal tunnel syndrome (Tr. 318) were made, but these new diagnoses did not prompt a change in Plaintiff's physical therapy, or course of treatment (Tr. 314, 318). By April 2008, Plaintiff was making "good progress" with therapy (Tr. 345, 347). Dr. Brennan stated that her lumbar radiculopathy was "[r]esolving" (Tr. 347). The next month, Dr. Brennan indicated that Plaintiff was caring for her ill husband, which was slowing down her progress (Tr. 354).

Dr. Brennan conducted two EMGs and nerve conduction studies in 2007. In June, he found a mild right L5 and left S1 radiculopathy (Tr. 394). An October EMG/nerve conduction study focusing on the cervical spine found mild bilateral carpal tunnel syndrome, for which Plaintiff was given splints. There was no indication of any problem with the cervical nerve roots (Tr. 396).

### 3. Expert Testimony

A medical expert, Dr. Ronald Semerdjian, testified at Plaintiff's hearing. He found that Plaintiff could perform sedentary work, with some postural limitations and a sit/stand option (Tr.

47). Specifically, Dr. Semerdjian concluded that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. Dr. Semerdjian also stated that it was possible that Plaintiff's condition had worsened over time (Tr. 49). Dr. Semerdjian noted that the MRI and EMG results were not in the record, and Plaintiff provided these records after the hearing. The ALJ then sent the doctor an interrogatory, and Dr. Semerdjian responded by surveying the medical evidence and repeating his conclusion concerning Plaintiff's abilities (Tr. 398).

During the hearing, the ALJ asked William Newman, a vocational expert, what work an individual could perform with the physical limitations provided by Dr. Semerdjian, restrictions on unprotected heights and dangerous moving machinery (because of a history of seizures), and a limitation to simple, routine tasks (Tr. 52). The vocational expert responded that such an individual could work as an order clerk (1,220 jobs in Detroit, and 5,830 in Michigan), a sorter (5,319 jobs in Detroit and 29,690 in Michigan), or a bench assembler (9,958 jobs in Detroit and 14,862 in Michigan) (Tr. 54). Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff was not disabled (Tr. 18).

### C. *Plaintiff's Claims of Error*

Plaintiff's overarching argument on appeal is that the ALJ's decision is not supported by substantial evidence, and should be overturned. Specifically, Plaintiff argues: (1) that the ALJ did not give proper weight to Plaintiff's treating physician – Dr. Mark Brennan; and (2) that the ALJ posed an inaccurate and incomplete hypothetical question to the vocational expert, which did not account for all of Plaintiff's impairments.

### III. DISCUSSION

#### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required

to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing

the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. *Governing Law*

The "[c]laimant bears the burden of proving her entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

Plaintiff's first argument on appeal is that the ALJ erred by not adopting Dr. Brennan's opinion who, according to Plaintiff, concluded that Plaintiff "was not capable of working full time" (Pl. Br. at 7). Defendant responds that there is nothing in the record to support this proposition, and Defendant further notes that Plaintiff cites nothing to support this broad conclusion. Specifically, Defendant avers that Dr. Brennan did not offer any opinion on Plaintiff's functional limitations, beyond his observation that she had "made good progress with physical therapy but still [had] significant symptomalogy and functional loss" (Tr. 392). Defendant's argument is well-taken.

The issue of whether a claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e); *Warner v. Comm'r*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Gaskin v. Comm'r*, 280 F. App'x 472, 474 (6th Cir. 2008). "Generally, the opinions of treating physicians are given substantial, if not controlling

deference." *Warner v. Comm'r*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Comm'r*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on Plaintiff's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Plaintiff's own statements to Dr. Brennan do not support a finding of disability. The doctor wrote that Plaintiff "describes the functional loss of being unable to tolerate *prolonged* sitting or standing activities, bending or twisting at the back, or lifting *heavy* objects secondary to increased back pain." (Tr. 297 (emphasis added)). The ALJ accounted for all of the limitations Plaintiff indicated to Dr. Brennan, finding that Plaintiff needed the ability to sit or stand at will, limiting her postural activities, and barring her from lifting more than 20 pounds.

In describing Plaintiff's functional limitations in August 2007, Dr. Brennan observed that while Plaintiff still reported difficulties performing activities of daily life, she was pleased with the progress she had been making (Tr. 307). Dr. Brennan continued using the same language in

2008. In May, he wrote that Plaintiff had "made good progress with physical therapy but still [had] significant symptomalogy and functional loss" (Tr. 392). Although Plaintiff emphasizes this statement (Pl. Br. at 14), it indicates that Plaintiff was doing better than when she described her limitations the previous year. And, as noted earlier, the self-reported limitations were entirely consistent with the ALJ's findings.

The ALJ's ultimate decision is also supported by the reports of examining physicians Dr. Banerji and Frankowski. In his consultative examination, Dr. Banerji found "no significant abnormal physical finding or functional limitation" except for positive straight leg raising tests, and those at 80 degrees (Tr. 243). Dr. Frankowski, a treating neurologist, likewise reported an unexceptional physical exam except for a positive straight leg raise test and paraspinal muscle tightness (Tr. 258). Defendant persuasively argues that Plaintiff does not attempt to discredit these physicians' findings, but instead attempts to sidestep them by arguing for a later onset date. However, there is no triggering incident, such as an injury, which would explain a dramatic difference between Plaintiff's condition in 2006 or 2007. Accordingly, it was appropriate for the ALJ to look to Plaintiff's 2006 medical records to shed light on her medical condition in 2007. Furthermore, the ALJ properly considered the views of the testifying medical expert, Dr. Semerdjian, particularly since this medical expert was the only physician to have access to the entire record in this case.

In short, all of the medical records prior to Dr. Brennan strongly support a conclusion of non-disability. The objective medical evidence, including Dr. Brennan's interpretation of EMG tests, also fails to demonstrate that Plaintiff's impairment prevents her from doing any work. And even Dr. Brennan's recounting of Plaintiff's self-described functional limitations is

consistent with the ALJ's residual functional capacity conclusion. Substantial evidence supports the ALJ's decision that Plaintiff was physically capable of work in such jobs as an order clerk, sorter, or bench worker.

Plaintiff next argues that the ALJ erred by not submitting an accurate hypothetical question to the vocational expert. Plaintiff's argument is not well-taken. "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *See Casey v. Sec'y of HHS*, 987 F. 2d 1230, 1235 (6th Cir. 1993). This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476.

Plaintiff's argument concerning a flawed hypothetical question focuses largely on Plaintiff's alleged mental impairments. However, the evidence of Plaintiff's mental impairment is modest. Despite monthly visits for her physical complaints, Plaintiff never sought any mental health care. Dr. Brennan repeatedly noted that Plaintiff had "[n]o increased nervousness, mood changes, or depression" and was "[c]oping well" (Tr. 308). Dr. Banerji reported no psychiatric problems (Tr. 241) and, although Dr. Rydstedt incidentally noted some anxiety/depression, she did not prescribe treatment or recommend followup (Tr. 218). Plaintiff's lack of treatment history, coupled with her treating physicians' failure to even suggest mental health treatment, suggests Plaintiff was not so disabled as to be incapable of even simple, routine work. In fact,

Plaintiff never indicated that she was restricted from working because of mental health concerns, and no medical source ever opined that she had any limitations due to mental health concerns. Simply put, the ALJ's conclusions as to Plaintiff's limitations are supported by the record and are thus based upon substantial evidence. As such, the undersigned finds no error in the hypothetical question posed by the ALJ to the vocational expert.

In sum, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decision makers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: September 24, 2010

### Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, September 24, 2010, by electronic and/or ordinary mail.

S/Barbara M. Radke<br>
Judicial Assistant