**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TINA M EHROB,

      Plaintiff,                                    Civil No. 09-13732
                                                       Judge Victoria A. Roberts
v.                                                          Magistrate Judge Mark A. Randon

COMMISSIONER
OF SOCIAL SECURITY,

      Defendant.

_____/

**ORDER**

**I.   INTRODUCTION**

This matter is before the Court on the parties' cross Motions for Summary Judgment. Magistrate Judge Mark A. Randon recommends that the Court GRANT Defendant's motion and DENY Plaintiff's motion.

The Court **ADOPTS** Magistrate Randon's recommendation, with modification.

**II.   PROCEDURAL HISTORY AND FACTS**

Magistrate Randon sufficiently summarizes the relevant facts and procedural history. His summary is incorporated by reference. The Court relies on additional facts and history, where noted in this Order.

**III.   STANDARD OF REVIEW**

This Court must review the Administrative Law Judge's (ALJ) decision to decide if it is supported by "substantial evidence."   "Substantial evidence is more than a scintilla of

evidence but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Sec'y*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could also support the opposite conclusion. *Casey v. Sec'y of Health and Human Serv.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

This standard is deferential, and presupposes a "zone of choice" within which the ALJ may make a decision without being reversed. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). Accordingly, if the Commissioner's determination is supported by substantial evidence, it must stand, regardless of whether the Court would resolve the disputed issues of fact differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In reviewing the Commissioner's decision, the Court may consider only the record that was before the ALJ, and cannot review the evidence *de novo*, weigh the evidence, or make credibility determinations. *Id.*

**IV.   ARGUMENTS**

The Social Security Administration uses a five step analysis to determine whether a claimant is eligible for benefits. The claimant must establish that: 1) she is not presently engaged in gainful employment; 2) she suffers from an impairment or combination of impairments that is severe; and 3) the impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant meets her burden at step three, she establishes eligibility. If the claimant does not, she may still show her eligibility at step four by proving she did

2

not have the "residual functional capacity" (RFC) to perform past work. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If she has the RFC to perform past relevant work, the claimant is not disabled.

If the claimant satisfies her burden at the fourth step by showing she does not have the RFC to perform past relevant work, the burden shifts to the Commissioner at the fifth step to show there is other work available in the economy that the claimant can perform. 20 C.F.R. 404.1520(g). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y*, 820 F.2d 777, 779 (6th Cir. 1987). This substantial evidence may be in the form of Vocational Expert (VE) testimony, but only if the hypothetical question posed to the VE accurately portrays the claimant's individual physical and mental impairments. *Id.*

**A.    Plaintiff's Claims**

On October 30, 2006, Plaintiff Tina Ehrob filed an application for disability benefits, claiming a disability onset date of July 24, 2003. Plaintiff later amended the onset date to April 5, 2007. Plaintiff claims to have a congenital back disorder, epilepsy, carpal tunnel, heart problems, and an anxiety and adjustment disorder which render her disabled. Plaintiff says she suffers intense back pain, knee pain, leg pain, and tingling and numbness in her extremities, as well as the inability to maintain attention and concentration, perform activities within a schedule, accept instructions, and respond appropriately to criticism and changes in a work setting. Her past work experience includes performing work as a cashier, telemarketer, stock person, pharmacy technician, and leasing agent. She has not worked since early 2006. Tr. 27-29.

During the hearing on January 21, 2009, Plaintiff testified she can only stand or sit for about 15 minutes at a time, and is always changing positions. Tr. 35. Plaintiff says that her pain makes it difficult for her to sit. The pain and numbness in her legs and arms make it difficult for her to drive long distances. Tr. 26. She takes Vicodin, and it causes her drowsiness and itching. Tr. 37. She has trouble using stairs, and cannot carry anything while doing so. Tr. 36. She lies down intermittently throughout the day, and spends more time lying down than up sitting up. Tr. 37-38. She has trouble sleeping, and wakes up at least three times per night. Tr. 31.

Plaintiff also has problems with her fingers due to carpel tunnel and back pain, which sometimes causes her difficulty with buttons. Tr. 36. However, Plaintiff reported that she can lift a gallon of milk, and she rarely has trouble grasping or holding items. Tr. 35, 39.

Plaintiff has a history of grand mal seizures. Tr. 29-30. She testified that in the last six years, she has had eight grand mal seizures; however, she is on medication that controls them, and has not had any in the last four years. Tr. 30. Despite this, she testified that she has "vision disturbances which point towards petit mal seizures." Tr. 30. This happens 2 to 4 times per month, and causes her to become weak and disoriented for a few seconds. Tr. 30-31.

Plaintiff testified that she has problems with memory and attention, and has trouble focusing. Tr. 34. She says that she has had this problem her entire life, but it has gotten worse with age. Tr. 34. However, she does enjoy reading. Tr. 35.

Despite her pain, Plaintiff is able to: dress herself and shower; do dishes; cook using the microwave; cook on the stove if she does not have to stand long; fold clothes;

and sweep the kitchen, which is very small, from time to time. Tr. 32-33. Her husband and friends shop for food; help her with the housework; wash laundry; and mop or vacuum her floors. Tr. 32-33.

Plaintiff testified that her condition deteriorated over the last year, with more intense pain that prevents her from leaving her apartment often. Tr. 31. She testified that the farthest she had walked in a month was approximately half a block, and that her condition prevents her from going anywhere. Tr. 32-33. Her inactivity and pain cause her to feel depressed, and she has little energy. Tr. 33-34.

**B.    Magistrate's Recommendation**

To determine the range of suitable jobs available for persons with Plaintiff's limitations, the ALJ asked the VE to imagine an individual of Plaintiff's age with the same educational background and work history who: can lift 20 pounds occasionally; can lift 10 pounds frequently; can stand and walk 2 of 8 hours, in divided periods; can sit 6 of 8 hours; must be able to sit or stand at will; and, has occasional posturals and limitations on her hands. The individual also cannot be exposed to unprotected heights and dangerous moving machinery, cannot drive a vehicle, and is limited to simple, routine tasks. Based upon this hypothetical, the VE testified that the individual described could perform unskilled, sedentary work as an order clerk, sorter, and bench assembler. Tr. 53-54.

When the individual was restricted to unskilled, sedentary work that did not require: maintaining attention and concentration; performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances; accepting instructions and responding appropriately to criticism from supervisors; and, responding

5

to changes in the work setting, the VE testified that the individual could not perform the jobs described above, and would have trouble performing any competitive work. Tr. 55-56.

A medical advisor (MA) testified at the hearing before the ALJ. He said that there was a divergence of medical opinions in Plaintiff's medical evidence. Specifically, he testified that there appeared to be a significant difference between Dr. Brennan's opinions beginning in 2007, and that of previous examiners in the record. Tr. 43. According to the MA, where previous doctors said Plaintiff's examinations were normal, Dr. Brennan's examinations presented significant abnormalities with respect to range of motion and evidence of numbness. Tr. 44. He testified that there was no objective evidence in the record to substantiate some of Dr. Brennan's opinions. Tr. 45. However, the MA noted that some of Dr. Brennan's actual test results were omitted from the record. Tr. 44-45. Additionally, the MA found it significant that Dr. Brennan's reports appeared to follow a template. Therefore, the MA testified that it was appropriate to take the "middle ground" and find that Plaintiff was capable of sedentary work, with restrictions. He testified that, based on Plaintiff's medical records, Plaintiff could perform sedentary work, with some postural limitations, could lift 20 pounds occasionally, and 10 pounds frequently, with a sit/ stand option.

The MA testified that Plaintiff's testimony concerning her limitations and pain were consistent with Dr. Brennan's findings. He also testified that it was possible that the discrepancy between the earlier examinations and Dr. Brennan's examinations beginning in 2007 could be because Plaintiff's condition had worsened over time. However, he again noted that there was not objective medical evidence in the record to

support Dr. Brennan's opinions. Tr. 49-50.

Based on this, Plaintiff asked the ALJ for time to submit additional medical records after the hearing, which the ALJ allowed. Tr. 50.  Plaintiff submitted EMGs from 6/14/07 and 10/11/07, and an MRI from 12/02/06. Tr. 391-397.  After receiving the test results, the ALJ sent the MA interrogatories with the evidence attached.  Tr. 408. The MA sent back responses, with virtually the same opinion of Plaintiff's abilities. Tr. 398-400.

The ALJ found that Plaintiff's spinal degenerative disc disease and adjustment disorder with anxiety were "severe" impairments within the meanings of the Regulations. Nevertheless, the ALJ found that Plaintiff's impairments were not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, or Regulations No. 4.

The ALJ assessed Plaintiff's RFC and determined that she retains the RFC to perform sedentary work, except that she can carry/lift 20 pounds occasionally and 10 pounds frequently; stand/walk 2 of 8 hours in divided periods; sit 6 of 8 hours with the option to sit or stand at will; and, perform postural activities such as stooping, crawling, crouching, kneeling, or balancing occasionally.  The work must allow her to avoid exposure to unprotected heights, and she is limited to simple routine tasks. Tr. 16. The ALJ found there are a significant number of jobs in the national economy Plaintiff can perform.  Hence, the ALJ concluded that Plaintiff was not under a "disability" as defined in the Social Security Act.

The Magistrate recommends the Court uphold the decision.  According to the Magistrate, there is substantial evidence in the record to support the ALJ's decision.

The Magistrate says the ALJ gave proper weight to Plaintiff's treating physician, Dr. Mark Brennan and posed an accurate hypothetical to the VE. According to the Magistrate, Dr. Brennan never opined that Plaintiff was not capable of working full time. He found that all the medical records prior to Dr. Brennan's support the ALJ's decision, and Dr. Brennan's interpretation of the objective evidence fails to demonstrate that Plaintiff is disabled. Additionally, the Magistrate found that Plaintiff's own statements to Dr. Brennan about her symptoms and limitations do not support a finding of disability.

**C.    Plaintiff's Objections**

Plaintiff objects to the Magistrate's conclusion that there is substantial evidence to support the Commissioner's determination that Plaintiff is not disabled. Specifically, Plaintiff says that the Magistrate uses the incorrect onset date, inaccurately describes the findings of medical reports, and discounts newer medical evidence with older medical evidence that is prior to the alleged onset date. Additionally, Plaintiff says that the Magistrate and ALJ failed to give appropriate weight to Dr. Brennan's medical assessments.

**D.    Analysis**

       **1.    The onset date used by the ALJ is unclear.**

Plaintiff objects to the Magistrate's R&R because Plaintiff says that it uses the incorrect onset date. Specifically, Plaintiff argues that the more favorable medical opinions beginning in 2007, were discounted by the Magistrate due to the improper consideration of records that preceded the 2007 onset date. Plaintiff contends that, although she originally alleged an onset date of July 24, 2003, she amended her onset

8

date to April 7, 2007. Plaintiff says that it makes no difference that records prior to the onset date may support a finding that she is not disabled; later records "tell a different story." In essence, Plaintiff claims that her condition deteriorated after 2006, and the failure to use the correct onset date prejudiced her.

"The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." Soc. Sec. Rul. 83-20, 1983 WL 31249 at *1. "In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." *Id.* at *2. The applicant's allegation as to when disability began is the starting point for determining the onset date. *Id.* Furthermore, an applicant may change or amend an alleged onset date in a report, letter, document, or at a hearing. *Id.* "In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available." *Id.* at *3. However, the ALJ is not bound by the Plaintiff's alleged onset date in the ultimate determination.

The Magistrate states that the Plaintiff alleged a disability onset date of July 26, 2003. R&R 1. However, Plaintiff says that the correct onset date for consideration is April 7, 2007, the amended onset date.

The Magistrate only briefly addresses Plaintiff's amended onset date in considering whether substantial evidence supported the ALJ's finding that Plaintiff was not disabled. The Magistrate notes that medical evidence from doctors predating Dr. Brennan's examinations of Plaintiff, as well as the MA's testimony, support the ALJ's finding. The Magistrate wrote:

9

> Defendant persuasively argues that Plaintiff does not attempt to discredit these physician's findings, but instead attempts to sidestep them by arguing for a later onset date. However, there is no triggering incident, such as an injury, which would explain a dramatic difference between Plaintiff's condition in 2006 and 2007. Accordingly, it was appropriate for the ALJ to look to Plaintiff's 2006 medical records to shed light on her medical condition in 2007. Furthermore, the ALJ properly considered the views of the testifying medical expert, Dr. Semerdjian, particularly since this medical expert was the only physician to have access to the entire record on this case.

This analysis, however, is a bit troubling, since the onset date considered by the ALJ is not so clear.

Plaintiff originally alleged that she became disabled on July 24, 2003. She later amended this onset date to April 5, 2007. Tr. 187. The ALJ correctly stated this on the first page of his opinion. Additionally, page one of the ALJ's opinion states that "the claimant has not been under a disability within the meaning of the Social Security Act from April 5, 2007 through the date of this decision." Tr. 12. Thus, from the first page of the ALJ's opinion, it appears that he considered the Plaintiff's amended onset date.

However, the ALJ states on page 7 that "the claimant was born on February 21, 1972 and was 31 years old . . . on the alleged disability onset date." Tr. 18. To reach the conclusion that Plaintiff was 31, the ALJ must have used the disability onset date of July 24, 2003. Had he used the amended onset date, the ALJ would have determined that Plaintiff was 35 at the time of the alleged disability onset. Moreover, on the last page of the ALJ's opinion, he finds that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from July 24, 2003 through the date of this decision . . . ." Tr. 19. It is simply unclear, which onset date was used by the ALJ.

The Court has identified few cases involving a similar error. These cases tend to

10

hold that an error in the alleged onset of disability is not itself a basis for remand, unless the Plaintiff can show that it caused her prejudice, either alone or in combination with other errors. *See Colbert v. Comm'r of Soc. Sec.,* 2009 WL 2059907 (S.D. Ohio July 9, 2009) (remanding case where ALJ failed to consider amended onset date and failed to consider relevant medical evidence)*; Gibson v. Astrue,* 2009 WL 3757686 (D.S.C. Nov. 9, 2009) (finding ALJ's use of wrong onset date harmless because it was a mere clerical error and the ALJ's decision analyzed plaintiff's claim using the amended date); *Hinchey v. Barnhart,* 2007 WL 1047065 (W.D.Va. April 5, 2007) (remanding case because ALJ's of onset date several years prior to actual alleged onset date tainted the decision and prejudiced plaintiff). This appears to comport with the Sixth Circuit's harmless error standard when reviewing an ALJ's decision. *See, e.g., Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 546 (6th Cir. 2004) (finding that failure to provide mandatory procedural protection is not harmless error); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528 (6th Cir. 2001). These cases are persuasive. Thus, Plaintiff must show this error is prejudicial, and she is not able to do so.

Although the Magistrate discussed medical evidence in the record dating as far back as 2003, noticeably absent from the ALJ's decision is any analysis or reference to any medical evidence prior to a December 2006 MRI performed by Dr. Brennan. Clearly, the ALJ was aware of this evidence, because the MA referenced it in his testimony at the hearing. However, it appears that the ALJ did not consider this evidence when making his decision.

For example, there is no indication in the ALJ's decision that he considered (1) medical evidence from Dr. Frankowski, a treating neurologist; (2) medical evidence from

11

Dr. Rystedt, an internist; or (3) medical evidence from Dr. Banerji, an internist. Tr. 215-285. Thus, the evidence the Magistrate used, to which the Plaintiff objects, was not used by the ALJ to reach his decision.

The Magistrate's consideration of this evidence is not improper, because a reviewing Court is bound to look at the record as a whole. Additionally, the Court notes that the Sixth Circuit does "not endorse the position that all evidence or medical records predating the alleged date of the onset of disability . . . are necessarily irrelevant . . . ." *Deboard v. Comm'r. of Soc. Sec.,* 211 Fed. Appx. 411, 414 (6th Cir. 2006). Thus, it was not error for the Magistrate to consider medical evidence in the record prior to the alleged onset date.

Furthermore, although the Court, is aware of the Sixth Circuit's recent decision in *Karger v. Comm'r of Soc. Sec.,* 2011 WL 477682 (6th Cir. Feb. 10, 2011), the Court does not believe that it mandates remand. In *Karger,* the Sixth Circuit vacated an ALJ's decision, where he failed to specify and explain the weight given to each medical source's opinion, and his decision did not reflect a careful consideration of the medical evidence as a whole. For instance, the ALJ failed to show he considered opinions from treating physicians which were favorable to the Plaintiff's claim of disability, and did not explain why he credited conflicting opinions from non-treating sources instead. Thus, the ALJ failed to mention evidence favorable to the Plaintiff, and did not sufficiently resolve conflicts in the medical evidence.

Here, however, these older medical opinions which conflict with Dr. Brennan's opinions, are not favorable to the Plaintiff's claim of disability. Plaintiff implicitly concedes this by arguing that these opinions should not be credited. Unlike in *Karger,*

12

the ALJ's omission of the medical opinions predating Dr. Brennan's are not harmful to Plaintiff; in fact, they appear to be helpful.

As the Magistrate correctly found, this older medical evidence supports the ALJ's decision. Thus, it is not prejudicial to the Plaintiff that the ALJ did not appear to rely upon it for his decision, and the Magistrate's reliance upon it does not warrant reversal.

### 2. The ALJ properly credited Dr. Brennan's medical opinions.

Plaintiff says the Magistrate did not accurately describe Dr. Brennan's medical reports. Specifically, Plaintiff says that the Magistrate, in summarizing her medical history, failed to include information from Dr. Brennan's April 2007 and May 2008 reports. Plaintiff is correct. However, there is no indication that the ALJ did not consider all the evidence provided by Dr. Brennan.

Plaintiff also says that the Magistrate improperly uses the progress that Plaintiff made in physical therapy as evidence that Plaintiff could work full time. The Court disagrees. Although the Magistrate noted that Dr. Brennan's reports indicate that Plaintiff experienced some relief, he also noted that Plaintiff's self reported limitations to Dr. Brennan were largely consistent with the ALJ's findings. This is correct; the ALJ explicitly credited the Plaintiff's claims of pain, to the extent that they were consistent with medical evidence in the record.

Finally, Plaintiff says that it is error for the ALJ to fail to adopt the medical opinions of Plaintiff's treating physician, Dr. Brennan, and instead credit the testimony of the MA.

The ALJ must give a treating physician's opinion controlling weight if: (1) it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques"

13

and (2) it is "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. 404.1527(d)(2). If the ALJ does not give the treating physician's opinion controlling weight, the treating physician's medical opinions are still entitled to deference, and the ALJ must consider specific factors in determining what weight the physician's opinion should be given. *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544-46 (6th Cir. 2004). Those factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source . . . ." *Id.*

Importantly, the regulations require that the ALJ "will always give good reasons in [his] notice of determination or decision for the weight [he gives to a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). "A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Wilson,* 378 F.3d at 544 (quoting SSR 96-2p); *Friend v. Comm'r of Soc. Sec.,* 375 Fed. Appx. 543, 550 (6th Cir. 2010). Failure to do so is reversible error because "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson,* 378 F.3d at 544. This is true even if a different outcome on remand is unlikely. *Id.* at 546. Thus, when an ALJ fails to follow these procedural rules, the Court will reverse and remand, unless the error is harmless. *See id.* at 547.

The parties agree that Dr. Brennan was Plaintiff's treating physician. However, as both the Magistrate and ALJ point out, Dr. Brennan did not opine that Plaintiff was incapable of any work. Dr. Brennan opined that Plaintiff had difficulty performing activities of daily living (July of 2008), and though her condition had improved, still had significant symptomatology and functional loss (May of 2008).

When addressing Dr. Brennan's opinions, the ALJ: (1) noted that the MA found that some of Dr. Brennan's conclusions were not supported by objective medical evidence; (2) cited specific examples of objective medical evidence which did not support Dr. Brennan's medical opinions and impressions; and (3) noted that it appeared that Dr. Brennan's notes were carried over from visit to visit using some type of form template. Because Dr. Brennan's opinions are not supported by objective medical evidence, the ALJ was not required to give Dr. Brennan's opinion controlling weight.

However, "a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *3-4. Even if not controlling, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." *Id.*

While the ALJ did not explicitly say how much weight he gave to Dr. Brennan's opinions, it is clear that the ALJ did not wholly reject them on the basis of the MA's testimony as the Plaintiff claims. Dr. Brennan did not opine that Plaintiff was incapable of working full time. Furthermore, based on the ALJ's finding that Plaintiff had severe

15

impairments, and that, although the she had the RFC to perform sedentary work, her ability to do so was restricted in several ways, the ALJ afforded Dr. Brennan's opinions substantial weight. For example, Dr. Brennan opined that Plaintiff had limited range of motion; persistent pain, numbness, tingling, and weakness; difficulty performing activities of daily living; and significant symptomatology and functional loss. The ALJ, in assessing Plaintiff's RFC, restricted Plaintiff to: carrying/lifting 20 pounds occasionally and 10 pounds frequently; standing/walking 2 of 8 hours in divided periods; sitting 6 of 8 hours with the option to sit or stand at will; and performing postural activities such as stooping, crawling, crouching, kneeling, or balancing only occasionally. Additionally, the ALJ restricted Plaintiff to work that allows her to avoid exposure to unprotected heights, and is limited to simple routine tasks. Tr. 16. This appears to account for Dr. Brennan's medical opinions, impressions, and diagnoses.

And, although the ALJ did not adopt Dr. Brennan's reporting of Plaintiff's complaints of pain severity, he was not required to do so. Opinions based on a Plaintiff's reporting of her symptoms, without objective medical evidence that the condition is of a severity to reasonably give rise to the level of pain alleged, are not entitled to deference. *See Young v. Sec. of Health and Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990).

The Court also finds Plaintiff's claim that the ALJ impermissibly credited the opinion of the MA over that of Plaintiff's treating physician is without merit. Generally, a MA's opinion is entitled to less weight than the opinion of an examining physician, and is entitled to little weight where it contradicts a treating physician's opinion. *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). However, an ALJ is not bound to credit a

treating physician's opinion that is not supported by medical evidence. The only instances where it appears that the ALJ credited the MA over Dr. Brennan are those instances where the ALJ found that the objective medical evidence, including tests performed by Dr. Brennan, did not support Dr. Brennan's impressions of Plaintiff's condition. Additionally, the ALJ may properly rely on the opinions of the MA where there is no contradictory evidence in the record. The MA's opinion that Plaintiff retained the RFC to perform sedentary work with restrictions was not contradicted, and the ALJ could rely upon it.

Thus, the ALJ accorded substantial deference to Dr. Brennan, and properly weighted his medical opinions. Because substantial evidence supports the ALJ's findings, the Court affirms.

## V. CONCLUSION

The Court ADOPTS Magistrate Randon's recommendation, with modification, **GRANTS** Defendant's Motion and **DENIES** Plaintiff's Motion.

**IT IS ORDERED**.

      /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 17, 2011

17

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 17, 2011.

s/Linda Vertriest
Deputy Clerk